UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DERRICK VIRGNE, | ) |
|             Plaintiff, | ) |
|      v. | ) No. 1:19-cv-02011-SEB-MJD |
| C.R. ENGLAND, INC., | ) |
|             Defendant. | ) |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND MOTION TO STAY**

Before the Court is Defendant C.R. England's ("CRE") Motion to Dismiss for Failure to State a Claim [Docket No. 10], filed on June 21, 2019 pursuant to Federal Rule of Civil Procedure 12(b)(6). In the alternative, Defendant CRE requests that the Court stay this proceeding due to an appeal (the "*Gadelhak*" appeal) pending before the Seventh Circuit that may resolve a judicial split as to the definition of what constitutes an automatic telephone dialing system ("ATDS") within this jurisdiction.[1] Plaintiff Derrick Virgne ("Virgne"), on behalf of himself and a putative class,[2] alleges that CRE violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), by sending several

---

[1] Pursuant to Local Rule 7.1(a), "[m]otions must be filed separately, but alternative motions may be filed in a single document if each is named in the title." Here, Defendant has failed to either (1) file its Motion to Stay separately from its Motion to Dismiss, or (2) include the Motion to Stay in the title of the single document. *See* Docket No. 10. The Court notes that Plaintiff seems to have been adequately notified and given the opportunity to respond to the Motion to Stay arguments regardless of this breach of Local Rule 7.1(a). Accordingly, the Court will consider the Motion to Stay despite the lack of compliance with Local Rule 7.1(a).

[2] Plaintiff's Motion to Certify Class is currently pending at Docket No. 53.

1

text messages to his cellular telephone that continued after he requested that the messages stop. CRE contends that Virgne's complaint fails to state a claim under the TCPA because it has omitted a key legal element of a TCPA violation: the use of an ATDS. For the reasons set forth below, Defendant's Motion to Dismiss and Motion to Stay are both <u>DENIED</u>.

## Factual Background

In June 2018, Plaintiff Virgne "inquired about CRE's truck driving school in Valparaiso, Indiana." Compl. ¶ 4. Mr. Virgne alleges that over the prior year, beginning in February 2019, CRE "repeatedly sent him text messages advertising the job driving school and imploring him to complete an application." Compl. ¶¶ 4, 14. Upon noting that CRE's text messages contained the statement "Reply STOP to opt out," Mr. Virgne "repeatedly messaged 'STOP' to CRE." Compl. ¶¶ 16-17. Nevertheless, Mr. Virgne alleges, "CRE continued to send automated text messages to Plaintiff's cellular telephone," despite his (numerous) "STOP" messages. Compl. ¶ 18.

CRE's messages were "sent from SMS short code 69273," and, as alleged by Mr. Virgne, were "composed of pre-written templates of impersonal text…without any actual human intervention in the drafting or sending of the [m]essages." Compl. ¶¶ 15, 20, 22. Mr. Virgne further alleges that "CRE stored Plaintiff's cellular telephone number in its text messaging system with thousands of other consumers' telephone numbers and then automatically sent identical messages *en masse* to Plaintiff and thousands of other consumers." Compl. ¶¶ 23-24. Based on these facts, Mr. Virgne alleges "on information and belief" that CRE's telephone system "constitutes an ATDS [with] the capacity to

2

store and dial sequentially generated numbers, randomly generated numbers or numbers from a database of numbers." Compl. ¶ 24.

## Legal Analysis

I. **Motion to Dismiss**

   A. **Standard of Review**

CRE has filed its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Under Rule 12(b)(6), the Court must accept as true all well-pled factual allegations in the complaint and draw all ensuing inferences in favor of the non-movant. *Lake v. Neal*, 585 F.3d 1059, 1060 (7th Cir. 2009). Nevertheless, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," and its "[f]actual allegations must . . . raise a right to relief above the speculative level." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (citations omitted). The complaint must therefore include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* Fed. R. Civ. P. 8(a)(2). Stated otherwise, a facially plausible complaint is one which permits "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

   B. **Discussion**

The TCPA is a federal statute designed to protect consumers from receiving unwanted solicitations and telephone calls. *Evans v. Corinthian Colleges, Inc.*, No. 1:14-cv-00002, 2014 WL 2866369, at *2 (S.D. Ind. June 23, 2014). Mr. Virgne's complaint alleges that

3

CRE violated the TCPA each time it texted his cellular phone[3]—after Mr. Virgne repeatedly replied "STOP" to opt out of the messages—using what Mr. Virgne alleges to be an ATDS. CRE seeks dismissal of the complaint under Rule 12(b)(6) on the grounds that it does not adequately allege use of an ATDS. Specifically, CRE claims that Mr. Virgne's only attempt to allege the use of an ATDS was by claiming "'upon information and belief'…that the hardware and software combination utilized by CRE has the capacity to store and dial sequentially generated numbers, or randomly generated numbers or numbers from a database of numbers." Def's Resp. at 13. Because, for the reasons set forth below, we find that the factual allegations set forth in the complaint rise above "the speculative level," we hold that the complaint satisfies the *Iqbal/Twombly* pleading requirements regarding the use of an ATDS, making dismissal inappropriate. *Pisciotta* 499 F.3d at 633.

The TCPA makes it unlawful for any person "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system…to any telephone number assigned to…a cellular dialing service." 47 U.S.C. § 227(b)(1)(A)(iii). Only two things are required to sufficiently plead a TCPA claim: (1) Defendant called a cellular phone; (2) via an ATDS. *Id.* Here, CRE challenges only the second element—the use of an ATDS. Def's Resp. at 6.

---

[3] It is undisputed that a text message "qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016).

4

The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The Federal Communication Commission ("FCC") issued rulings in 2003, 2008 and 2015, interpreting 47 U.S.C. § 227(a)(1), and expounding specifically on what constitutes an ATDS. *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2015 Order"), 30 FCC Rcd. 7961, 7972 ¶ 10 (2015); *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2008 Order"), 23 FCC Rcd. 559, 566 ¶ 12 (2008); *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2003 Order"), 18 FCC Rcd. 14014, 14091-93 ¶¶ 131-133 (2003).

In March of 2018, the FCC's 2015 interpretation of § 227(a)(1) came under scrutiny by the D.C. Circuit in *ACA International v. FCC*, and that Circuit ultimately "set aside the [FCC's] explanation of which devices qualify as an ATDS." 885 F.3d 687, 695 (D.C. Cir. 2018).[4] However, in so doing, the Court left unanswered the definition of an ATDS. *Id.* at 702-03. As a result, a split within Circuits arose regarding whether the 2003 and 2008 FCC interpretations were also invalidated by the *ACA* decision. The split, post-*ACA International*, involves the metes and bounds of an ATDS.

One side of the split holds that all of the FCC interpretations were invalidated by *ACA International*, and that, in order for the system to be an ATDS, it must comport strictly

---

[4] The *ACA* decision is binding nationwide. *See, e.g.*, *King v. Time Warner Cable Inc.*, 894 F.3d 473 n.3 (2d Cir. 2018); *Pinkus v. Sirius XM Radio*, Inc., 319 F. Supp. 3d 927, 932 (N.D. Ill. 2018).

with the language of 47 U.S.C. § 227(a)(1). As such, it must have "the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator." 47 U.S.C. § 227(a)(1); *Pinkus* 319 F. Supp. 3d at 938. The other side of the split has concluded that *ACA International*'s analysis was limited to the 2015 FCC interpretation. *See Maes v. Charter Commc'n,* 345 F. Supp. 3d 1064, 1068–69 (W.D. Wis. 2018); *Reyes v. BCA Fin. Servs., Inc.*, 312 F. Supp. 3d 1308, 1321 (S.D. Fla. 2018) ("nowhere in the D.C. Circuit's opinion are the prior FCC orders overruled"). Thus, the afore-mentioned courts are of the opinion that the 2003 and 2008 FCC interpretations—interpretations that expanded the definition of an ATDS—have been left intact. The Seventh Circuit has not yet addressed this issue.

CRE devotes a large portion of its brief urging this Court to adopt the former (more stringent) definition of an ATDS. But, in doing so, CRE misses the forest for the trees, because, at this early stage of the proceeding, we need not definitively determine the contours of what constitutes an ATDS. *Hudson v. Ralph Lauren Corp.*, 385 F. Supp. 3d 639, 644 (N.D. Ill. 2019); *Amodeo v. Grubhub Inc.*, No. 1:17-cv-1284, Doc. 55 at 3–4 (N.D. Ill. Feb. 21, 2019). Here, even assuming *arguendo* that the narrower definition of an ATDS applies, the factual allegations set forth in Mr. Virgne's complaint are sufficient to satisfy the *Twombly/Iqbal* pleading standard and plausibly allege a claim against CRE that it utilized an ATDS.

The Northern District of Illinois decision in *Hudson v. Ralph Lauren Corp.* is instructive. There, plaintiff received a message from defendant, through the short

message service ("SMS") shortcode 894-48. *Hudson*, 385 F. Supp. 3d at 641. Once plaintiff consented to receiving the messages, he received "more than [the six consented-to] messages a month, all from the same 894-48 SMS code." *Id.* "All of the text messages marketed [defendant's] products… none addressed [the plaintiff] by name, [and the defendant] sent similar text messages to other individuals as well." *Id.*

The Court in *Hudson* explained that, even given defendant's "proposed narrow definition of an ATDS," plaintiffs complaint did not "foreclose the use of an ATDS." *Id.* at 644. The Court noted that plaintiff did not merely parrot the TCPA's language in alleging ATDS use but included allegations regarding the generic nature of the messages, the use of an SMS shortcode, and the fact that others received the same messages. *Id.* at 644-45. Thus, defendant's motion to dismiss was denied. *Id.* at 648.

The same analysis is applicable here. Like the complaint in *Hudson*, Mr. Virgne's complaint includes more than the boiler plate allegation that CRE used a device capable of storing and dialing sequentially generated numbers, randomly generated numbers or numbers from a database of numbers. Compl. ¶ 26. The complaint additionally alleges that the messages (1) came via use of an SMS shortcode, (Compl. ¶ 15); (2) were composed of pre-written templates of impersonal text, (Compl. ¶ 20); (3) were devoid of any actual human intervention in the drafting or sending of the messages, (Compl. ¶ 22); and (4) were sent *en masse* to thousands of other consumers, (Compl. ¶ 24).

Mr. Virgne has not simply cited verbatim the language of the TCPA, he has provided the requisite "supporting details" to survive a 12(b)(6) motion. *Johanson v. Vivant, Inc.*,

12 C 7159, 2012 WL 6590551 at *3 (N.D. Ill. Dec. 18, 2012). Specifically, Mr. Virgne included allegations relating to "the content of the message, the context in which it was received, and the existence of similar messages, to raise an inference that an automated dialer was utilized." *Priester v. eDegreeAdvisor, LLC*, No. 5:15-CV-04218-EJD, 2017 WL 4237008 at *3 (N.D. Cal. Sept. 25, 2017) (internal citations omitted). Requiring any higher degree of specificity risks making it "nearly impossible for plaintiffs" to state a claim under the TCPA and would make defendants "virtually immune to TCPA claims." *Serban v. Cargurus Inc.*, 2016 WL 4709077, at *3 (N.D. Ill. Sept. 8, 2016).

The caselaw cited by CRE in support of dismissal is inapposite. First, CRE's reliance on *Pinkus* is misplaced, as the Plaintiff in *Pinkus conceded* that the device did not have the required ATDS capacity. 319 F. Supp. 3d at 939. Mr. Virgne has made no similar concession here.

Second, a careful read of other cases cited by CRE shows that, unlike here, the plaintiff relied solely on the language of the TCPA statute without more. *See, e.g., Lord v. Kisling, Nestico & Redick, LLC*, No. 1:17-CV-01739, 2018 WL 3391941, at *3 (N.D. Ohio July 12, 2018) (holding that Plaintiffs' allegations were "not facts" and were "simply conclusions that are insufficient to state a claim."); *Bader v. Navient Sols., LLC*, No. 18-CV-1367, 2019 WL 2491537, at *2 (N.D. Ill. June 14, 2019) ("Bader does not put forth any factual allegations that suggest Navient Solutions dialed his number using equipment that had the capacity to generate random or sequential numbers"). These cases therefore are all distinguishable from the case at bar.

Finally, CRE points out that Mr. Virgne provided his number to CRE, arguing that Mr. Virgne's cell phone therefore could not have been randomly or sequentially dialed. Def's Resp. at 14. We find this argument unpersuasive as it would "read the word 'capacity'" out of the definition of an ATDS—the very same definition CRE urges us to adopt. *Hudson* 385 F. Supp. 3d at 645; *King*, 894 F.3d at 480 ("[T]he TCPA applies to calls from a device that can perform the functions of an autodialer, regardless of whether it has actually done so in a particular case."); *Pinkus*, 319 F. Supp. 3d at 939 (holding that a device may qualify as an ATDS even if the capacity to generate numbers randomly or sequentially and then dial them "is not deployed for practical reasons"). Even if it turns out that CRE did not use the functions of an ATDS when dialing Mr. Virgne's number, this does not foreclose the possibility that an ATDS (with the required *capacity*) may have been used all the same.

For these reasons, we hold that Plaintiff's allegations are sufficient at this stage of the litigation to plausibly allege that Defendant violated the TCPA, regardless of whether *ACA International* invalidated the FCC's 2003 and 2008 rulings. Defendants Motion to Dismiss [Docket No. 10] is therefore <u>DENIED</u>.

## II.     Motion to Stay

In the alternative, Defendant CRE requests that we stay this litigation given the pending appeal (the "*Gadelhak*" appeal) before the Seventh Circuit that promises to resolve the judicial split as to the definition of what constitutes an ATDS within this jurisdiction. "The District Court has broad discretion to stay proceedings as an incident to

9

its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). In doing so, the Court considers the "economy of time and effort for itself, for counsel, and for the litigants." *Radio Corporation of America v. Igoe*, 217 F.2d 218, 220 (7th Cir. 1995). The Court recognizes the competing interests references by the litigants, namely, the interests of prejudice, hardship, fairness and equality.

Having determined that Mr. Virgne has successfully pleaded the use of an ATDS in his complaint under the more stringent *post-ACA* standard urged by CRE, the motion to stay is effectively moot. Furthermore, because Mr. Virgne can proceed to litigate his claim under either definition, CRE is neither prejudiced nor overly burdened by moving forward with the discovery phase of this case. As such, the Motion to Stay [Docket No. 10] is <u>DENIED</u>.

IT IS SO ORDERED:

Date: ___1/28/2020___         _Sarah Evans Barker_____

                                                             SARAH EVANS BARKER, JUDGE
                                                             United States District Court
                                                             Southern District of Indiana

Distribution:

David S. Almeida
BENESCH, FRIEDLANDER, COPLAN & ARONOFF, LLP (Chicago)
dalmeida@beneschlaw.com

Amy L. Cueller
LEMBERG LAW LLC
acueller@lemberglaw.com

Mark S. Eisen
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
meisen@beneschlaw.com

David M. Krueger
BENESCH FRIEDLANDER COPLAN & ARONOFF LLP
dkrueger@beneschlaw.com

Sergei Lemberg
LEMBERG LAW, LLC
slemberg@lemberglaw.com

Joshua Markovits
LEMBERG LAW, LLC
jmarkovits@lemberglaw.com

Stephen F. Taylor
LEMBERG LAW LLC
staylor@lemberglaw.com