UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DERRICK VIRGNE, | ) |
|                 Plaintiff, | ) |
|     v. | ) No. 1:19-cv-02011-SEB-MJD |
| C.R. ENGLAND, INC., | ) |
|                 Defendant. | ) |

**ORDER ON DEFENDANT'S MOTION TO COMPEL**

This matter is before the Court on Defendant's Motion to Compel. [Dkt. 86.] For the reasons set forth below, Defendant's motion is **GRANTED**.

**I. Background**

Plaintiff brings this action on behalf of himself and a putative class,[1] alleging that Defendant violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227(b)(1)(A)(iii), by sending text massages using an automated telephone dialer system ("ATDS"), after Plaintiff repeatedly replied "STOP" to opt out of receiving the messages. Plaintiff alleges that Defendant's telephone system constitutes an ATDS with "the capacity to store and dial sequentially generated numbers, randomly generated numbers or numbers from a database of numbers." [Dkt. 1 at 6.]

At issue in the instant motion is Defendant's Request for Production No. 7, which reads:

---

[1] Plaintiff's Motion to Certify Class is currently pending at Docket No. 53.

>Produce any and all retention agreements you have signed relating to the retention of legal counsel in this Action.

[Dkt. 87-1 at 5.] Plaintiff refused to produce the document on the ground that it is "not relevant to the claims and defenses in this action and is instead propounded for the purposes of harassment." [*Id*.]

Defendant contends that the engagement letter is "relevant to Plaintiff's adequacy as a class representative under Rule 23(a)(4), and Plaintiff's objections to the production of this single document are without merit." [Dkt. 86 at 1.] In response, Plaintiff alleges that Defendant's motion fails to "articulate any basis for the retention agreement beyond fishing," and that, "the agreement is not relevant and this Court should join the majority of courts denying speculative motions to request retainer agreements." [Dkt. 93 at 3.] Unable to resolve this dispute informally, or through a discovery conference with the Court, Defendant filed its Motion to Compel Discovery on January 16, 2020. [Dkt. 86.]

## II. Discussion

A party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or provides evasive or incomplete responses. Fed. R. Civ. P. 37(a)(2)-(3). The burden "rests upon the objecting party to show why a particular discovery request is improper." *Kodish v. Oakbrook Terrace Fire Protection Dist*., 235 F.R.D. 447, 449-50 (N.D. Ill. 2006). The objecting party cannot meet this burden with merely "a reflexive invocation of 'the same baseless, often abused litany' that the requested discovery is 'vague, ambiguous, overly broad, unduly burdensome' or that it is 'neither relevant nor reasonably calculated to lead to the

discovery of admissible evidence.'" *Burkybile v. Mitsubishi Motors, Corp.*, 2006 WL 2325506, at *6 (N.D. Ill. August 2, 2006) (internal citations and quotation marks omitted).

Plaintiff argues that the request for production of the engagement agreement is for the purpose of harassment and that, "CRE could not and would not articulate any basis for the retention agreement beyond fishing." [Dkt. 93 at 3.] Defendant responds that this document is relevant to the issue of class certification because it could contain "clauses in violation of the rules of professional conduct" or "clauses otherwise restricting Plaintiff's ability to control this case [which] is a critical inquiry in properly evaluating Rule 23(a)(4)." [Dkt. 97 at 5.] Defendant further asserts that the engagement agreement could "outline the relationship between the named plaintiff and his counsel, and thus contain numerous provisions relevant to control of the litigation, settlement and the named plaintiff's ability to genuinely oversee his counsel." [Dkt. 87 at 5.]

To certify a class, Plaintiff must meet the requirements of numerosity, commonality, typicality, and adequacy, as well as the requirements of predominance and superiority. *See* Fed. R. Civ. P. 23(a) and (b); *see also Harper v. Sheriff of Cook Co.*, 581 F.3d 511, 513 (7th Cir. 2009); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Class certification requires a "rigorous analysis" of all of the relevant elements, which always includes adequacy, falling as it does in Rule 23(a)'s list of four prerequisites. *See, e.g., Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011) ("This adequate representation inquiry consists of two parts: (1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel."); *Culver v. City of Milwaukee*, 277 F.3d 908, 910 (7th Cir. 2002) (A "class action is an awkward device, requiring careful judicial supervision, because the fate of the class members is to a

3

considerable extent in the hands of a single plaintiff . . . whom the other members of the class may not know and who may not be able or willing to be an adequate fiduciary of their interests.").

To establish the adequacy of class representation, Plaintiff must show that the "representative parties will fairly and adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a)(4); *see also* Fed. R. Civ. P. 23(g). To be an adequate class representative, the named Plaintiff must not have "antagonistic or conflicting claims." *See Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993). The claims and interests of the named class representative must not conflict with those of the class, the class representative must have sufficient interest in the outcome of the case, and the class counsel must be experienced and competent. *Id.* at 598; *Secretary of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986) (noting that the court must examine the class representative's capabilities, diligence and potential conflicts, as well as those of his legal counsel when evaluating adequacy). Plaintiff's engagement agreement with his counsel is relevant to the issue of adequacy of class representation because it could contain information regarding the division of power between counsel and Plaintiff, including whether Plaintiff retains the ability to make independent decisions about critical issues like settlement, and about Plaintiff and class counsel's respective financial incentives. *See In re Ocean Bank*, 2007 WL 1063042, at *4-5 (N.D. Ill. Apr. 9, 2007) (noting that if class counsel can veto any settlement, or insist on settling when the named representative wants to go to trial, then the named representative is arguably inadequate because he cannot make critical decisions about the litigation.); *Epstein v. Am. Reserve Corp.*, 1985 WL 2598, at *3 (N.D. Ill. Sept. 18, 1985) (engagement letters are "relevant to the ability of named

4

plaintiffs to protect the interest of potential class members and hence are a proper subject for discovery.").

Plaintiff argues that Plaintiff's deposition testimony provides the information necessary for the Court to evaluate the adequacy of his ability to represent the class. Plaintiff notes that Defendant "has deposed the Plaintiff and asked him all manner of questions concerning this case, settlement offers, settlement discussions and his relationship with counsel. Defendant even quizzed Plaintiff about his knowledge about the mediator's proposal in this case and his control over the litigation." [Dkt. 93 at 3.] However, during his deposition, Plaintiff testified, "I recall signing something that allows them to represent the case" to Defendant's question of whether he "signed an agreement to hire [his] law firm." [Dkt. 97-1 at 9.] When asked if he had read the engagement letter with his counsel, Plaintiff answered, "I believe so yes. At least skimmed it." [Dkt. 97-1 at 10.] When asked if the "engagement letter contain[s] any provision concerning the payment of fees if [Plaintiff] do[es] something that [his] counsel does not agree with as it relates to settlement?" Plaintiff replied, "I don't know without looking at it in front of me." [Dkt. 97-1 at 11.] When asked, "What's your understanding of how your lawyers will be paid?" and "roughly how much percentage-wise?" on a class-wide basis, Plaintiff stated, "I can't remember off the top of my head. It's a percentage, I believe." [Dkt. 97-1 at 11.] Plaintiff further stated, "I don't know the specifics of how much skin in the game they have, so I don't - - I don't know." [*Id*.] In addition, Defendant notes that "Plaintiff, by way of example, did not attend the Parties' all-day mediation in November 2019. Plaintiff's deposition testimony reflects that Plaintiff's counsel did not contact Plaintiff *one single time* during the mediation despite making and rejecting a variety of settlement offers. This gives rise to the specter that Plaintiff's engagement

letter with his counsel allows his counsel to control settlement discussions in clear violation of the rules of professional conduct." [Dkt. 97 at 2. (emphasis in original)]

The Court agrees that Defendant is entitled to discover Plaintiff's engagement agreement with his counsel in order to examine whether there are any aspects of that agreement that makes Plaintiff an inadequate class representative. Defendant's Request for Production is not an improper fishing expedition, as alleged by Plaintiff; rather, Defendant has established the relevance of the document requested to the adequacy inquiry, and, therefore, is a proper subject for discovery.

### III. Conclusion

Defendant's Motion to Compel Discovery [Dkt. 86] is **GRANTED**. Plaintiff is **ORDERED** to respond fully and completely to Defendant's Request for Production under No. 7 on or before February 26, 2020. If Defendant wishes to seek attorney fees pursuant to Federal Rule of Civil Procedure 37(a)(5)(A), it must file a motion and supporting documentation **within 21 days of the date of this Order**.

SO ORDERED.

Dated:  20 FEB 2020

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.